# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| IN RE: WIRE HARNESS | Case No. 2:12-cv-00103-MOB-MKM |
| IN RE: INSTRUMENT PANEL CLUSTERS | Case No. 2:12-cv-00203-MOB-MKM |
| IN RE: FUEL SENDERS | Case No. 2:12-cv-00303-MOB-MKM |
| IN RE: HEATER CONTROL PANELS | Case No. 2:12-cv-00403-MOB-MKM |
| IN RE: OCCUPANT SAFETY RESTRAINT SYSTEMS | Case No. 2:12-cv-00603-MOB-MKM |
| IN RE: ALTERNATORS | Case No. 2:13-cv-00703-MOB-MKM |
| IN RE: RADIATORS | Case No. 2:13-cv-01003-MOB-MKM |
| IN RE: STARTERS | Case No. 2:13-cv-01103-MOB-MKM |
| IN RE: SWITCHES | Case No. 2:13-cv-01303-MOB-MKM |
| IN RE: IGNITION COILS | Case No. 2:13-cv-01403-MOB-MKM |
| IN RE: MOTOR GENERATORS | Case No. 2:13-cv-01503-MOB-MKM |
| IN RE: STEERING ANGLE SENSORS | Case No. 2:13-cv-01603-MOB-MKM |
| IN RE: HID BALLASTS | Case No. 2:13-cv-01703-MOB-MKM |
| IN RE: INVERTERS | Case No. 2:13-cv-01803-MOB-MKM |
| IN RE: AIR FLOW METERS | Case No. 2:13-cv-02003-MOB-MKM |
| IN RE: FUEL INJECTION SYSTEMS | Case No. 2:13-cv-02203-MOB-MKM |
| IN RE: AUTOMATIC TRANSMISSION FLUID WARMERS | Case No. 2:13-cv-02403-MOB-MKM |
| IN RE: VALVE TIMING CONTROL DEVICES | Case No. 2:13-cv-02503-MOB-MKM |
| IN RE: ELECTRONIC THROTTLE BODIES | Case No. 2:13-cv-02603-MOB-MKM |
| THIS DOCUMENT RELATES TO: ALL END-PAYOR ACTIONS | |

## END-PAYOR PLAINTIFFS' MOTION FOR FINAL APPROVAL
## OF SETTLEMENTS WITH CERTAIN DEFENDANTS

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, End-Payor Plaintiffs hereby respectfully move the Court for final approval of the settlements between the End-Payor Plaintiffs and certain defendants, which the Court previously preliminarily approved, and for final certification, pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), for settlement purposes only, of the settlement classes previously provisionally certified by the Court.

Dated: March 10, 2016

By:  **/s/  Devon P. Allard                                 **
E. Powell Miller
Devon P. Allard
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
dpa@@millerlawpc.com

*Interim Liaison Counsel for the Proposed End-Payor Plaintiff Classes*

Steven N. Williams
Demetrius X. Lambrinos
Elizabeth Tran
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
swilliams@cpmlegal.com
dlambrinos@cpmlegal.com
etran@cpmlegal.com

Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS KAPLAN LLP**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
hsalzman@robinskaplan.com
bpersky@robinskaplan.com
wreiss@robinskaplan.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**

1

1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Omar Ochoa
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, TX 75202
Telephone: (214) 754-1900
Facsimile: (214)754-1933
toxford@susmangodfrey.com
oochoa@susmangodfrey.com

Chanler A. Langham
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 651-6666
clangham@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Proposed End-Payor Plaintiff Classes*

2

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| IN RE: WIRE HARNESS | Case No. 2:12-cv-00103-MOB-MKM |
| IN RE: INSTRUMENT PANEL CLUSTERS | Case No. 2:12-cv-00203-MOB-MKM |
| IN RE: FUEL SENDERS | Case No. 2:12-cv-00303-MOB-MKM |
| IN RE: HEATER CONTROL PANELS | Case No. 2:12-cv-00403-MOB-MKM |
| IN RE: OCCUPANT SAFETY RESTRAINT SYSTEMS | Case No. 2:12-cv-00603-MOB-MKM |
| IN RE: ALTERNATORS | Case No. 2:13-cv-00703-MOB-MKM |
| IN RE: RADIATORS | Case No. 2:13-cv-01003-MOB-MKM |
| IN RE: STARTERS | Case No. 2:13-cv-01103-MOB-MKM |
| IN RE: SWITCHES | Case No. 2:13-cv-01303-MOB-MKM |
| IN RE: IGNITION COILS | Case No. 2:13-cv-01403-MOB-MKM |
| IN RE: MOTOR GENERATORS | Case No. 2:13-cv-01503-MOB-MKM |
| IN RE: STEERING ANGLE SENSORS | Case No. 2:13-cv-01603-MOB-MKM |
| IN RE: HID BALLASTS | Case No. 2:13-cv-01703-MOB-MKM |
| IN RE: INVERTERS | Case No. 2:13-cv-01803-MOB-MKM |
| IN RE: AIR FLOW METERS | Case No. 2:13-cv-02003-MOB-MKM |
| IN RE: FUEL INJECTION SYSTEMS | Case No. 2:13-cv-02203-MOB-MKM |
| IN RE: AUTOMATIC TRANSMISSION FLUID WARMERS | Case No. 2:13-cv-02403-MOB-MKM |
| IN RE: VALVE TIMING CONTROL DEVICES | Case No. 2:13-cv-02503-MOB-MKM |
| IN RE: ELECTRONIC THROTTLE BODIES | Case No. 2:13-cv-02603-MOB-MKM |
| THIS DOCUMENT RELATES TO: ALL END-PAYOR ACTIONS | |

## END-PAYOR PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENTS WITH CERTAIN DEFENDANTS

1

**<u>Statement of Issues</u>**

1.  Whether the settlements between the End-Payor Plaintiffs and certain defendants are fair, reasonable, and adequate and should be granted final approval under Fed. R. Civ. P. 23?

2.  Whether the Court should grant final certification of the End-Payor Plaintiffs settlement classes it previously provisionally certified?

i

## Controlling or Most Appropriate Authorities

*Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

*In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp. Front-Loading Washer Prodcs. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)

*Sheick v. Auto. Component Carrier LLC*, No. 09-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)

*Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998)

*UAW v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

4184377v1/013283

**Table of Contents**

Statement of Issues ................................................................................................ i

Controlling or Most Appropriate Authorities .................................................... ii

Table of Contents ................................................................................................ iii

Table of Authorities ............................................................................................ v

Introduction .......................................................................................................... 1

Background ............................................................................................................ 2

I.      The Settlements Provide Substantial Benefits to EPPs .......................... 2

        A.      Cash Components of the Settlements. ...................................... 2

        B.      Cooperation and Other Terms. ................................................ 4

II.     The Notice Plan was Carried Out and Provided Adequate Notice of the
        Settlements. ................................................................................................ 5

III.    The Reaction of Settlement Class Members was Positive. ...................... 7

Legal Standard ...................................................................................................... 8

Argument .............................................................................................................. 10

IV.     The Settlements are Fair, Reasonable, and Adequate and Should be Given
        Final Approval. ......................................................................................... 10

        A.      The Likelihood of the EPPs' Success on the Merits Weighed Against
                the Relief Offered in the Settlements Supports Approval. ..... 11

        B.      The Complexity, Expense, and Likely Duration of Continued
                Litigation Favor Final Approval. ............................................. 13

        C.      The Judgment of Experienced Counsel Who Have Evaluated the
                Strength of the Claims, Defenses, and Risks Supports Approval. .......... 14

        D.      The Reaction of Class Members Weighs in Favor of Final Approval. ......... 15

        E.      The Settlements are Consistent with the Public Interest. ....... 16

        F.      The Settlement Agreements are the Result of Thorough Arm's Length
                Negotiations Conducted by Highly Experienced Counsel. .......... 16

V. Notice of the Settlements was Proper Under Rule 23(e) and Satisfied All Due Process Requirements. ...................................................................................17

VI. Certification of Settlement Classes is Appropriate. .........................................18

 A. The Settlement Classes Satisfy Rule 23(a). ........................................19

  1. The Settlement Classes Are So Numerous That It Is Impracticable To Bring All Class Members Before The Court. ...............19

  2. Common Questions of Law and Fact Exist. ..............................20

  3. EPPs' Claims are Typical of Those of the Settlement Classes. ................21

  4. EPP Class Representatives and Their Counsel Have Fairly and Adequately Represented the Interests of the Class Members. ..................22

 B. EPPs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes. ...........................................................................24

  1. Common Legal and Factual Questions Predominate. ...............................24

  2. Class Action Settlements Are Superior to Other Methods of Adjudication. ...........................................................................26

Conclusion ....................................................................................................................27

4184377v1/013283

# Table of Authorities

## Cases

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ........................................................................... 18, 24, 27

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds,*
  133 S.Ct. 1184 (2013) ................................................................................. 25

*Bacon v. Honda of America Mfg., Inc.,*
  370 F.3d 565 (6th Cir. 2004) ...................................................................... 19

*Beanie v. CenturyTel, Inc.,*
  511 F.3d 554 (6th Cir. 2007) ...................................................................... 24

*Berry v. Sch. Dist. of City of Benton Harbor,*
  184 F.R.D. 93 (W.D. Mich. 1998) .............................................................. 10

*Carson v. Am. Brands, Inc.,*
  450 U.S. 79 (1981) ........................................................................................ 9

*Cason-Merenda v. VHS of Mich., Inc.,*
  296 F.R.D. 528 (E.D. Mich. 2013) ................................................... 21, 22, 25

*Comcast Corp. v. Behrend,*
  133 S.Ct. 1426 (2013) ................................................................................. 25

*Date v. Sony Electronics, Inc.,*
  No. 07-15474, 2013 WL 3945981 (E.D. Mich. Jul. 31, 2013) ................... 14, 19, 22

*Dick v. Spring Commc'ns,*
  297 F.R.D. 283 (W.D. Ky. 2014) .............................................................. 9, 14

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974) .................................................................................... 17

*Fidel v. Farley,*
  534 F.3d 508 (6th Cir. 2008) ...................................................................... 18

*Fussell v. Wilkinson,*
  No. 1:03-cv-704, 2005 WL 3132321 (S.D. Ohio Nov. 22, 2005) .............. 10

*Girsh v. Jepson,*
  521 F.2d 153 (3d Cir. 1975) .......................................................................... 9

4184377v1/013283

*Golden v. City of Columbus,*
    404 F.3d 950 (6th Cir. 2005) ...................................................................... 19

*Grenada Invs., Inc. v. DWG Corp.,*
    962 F.2d 1203 (6th Cir. 1992) .............................................................. 11, 16

*Griffin v. Flagstar Bancorp, Inc.,*
    No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ............................ passim

*Grunin v. Int'l House of Pancakes,*
    513 F.2d 114 (8th Cir. 1975) ...................................................................... 18

*In re Am. Med. Sys., Inc.,*
    75 F.3d 1069 (6th Cir. 1996) ................................................................. 19, 22

*In re Auto. Refinishing Paint Antitrust Litig.,*
    617 F. Supp. 2d. 336 (E.D. Pa. 2007) ...................................................... 14, 16

*In re Automotive Refinishing Paint Antitrust Litig.,*
    MDL No. 1426, 2003 WL 23316645 (E.D. Pa. Sept. 5, 2003) ................................. 9

*In re Cardizem CD Antitrust Litig.,*
    200 F.R.D. 297 (E.D. Mich. 2001) ......................................................... 25, 27

*In re Cardizem CD Antitrust Litig.,*
    218 F.R.D. 508 (E.D. Mich. 2003) ............................................................ passim

*In re Corrugated Container Antitrust Litig.,*
    643 F.2d 195 (5th Cir. 1981) ...................................................................... 23

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.,*
    No. 3:08-MD01998, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ......................... 14

*In re Delphi Corp. Sec., Deriv. & ...........................................................* 14

*In re Domestic Air Transp. Antitrust Litig.,*
    141 F.R.D. 534 (N.D. Ga. 1992).................................................................. 18

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* No. M 02-1486 ,
    2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006) ...................................... 20

*In re Flat Glass Antitrust Litig.,*
    191 F.R.D. 472 (W.D. Pa. 1999) ........................................................... 20, 21

*In re Flonase Antitrust Litig.,*
    284 F.R.D. 207 (E.D. Pa. 2012)................................................................. 27

*In re Foundry Resins Antitrust Litig.,*
    242 F.R.D. 393 (S.D. Ohio 2007) .................................................. 19, 21, 22, 25

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................. 15

*In re Linerboard Antitrust Litig.*,
292 F. Supp. 2d 631 (E.D. Pa. 2003) ........................................................... 12

*In re NASDAQ Market-Makers Antitrust Litig.*,
169 F.R.D. 493 (S.D.N.Y 1996) .................................................................. 27

*In re Packaged Ice Antitrust Litig.*,
No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) .................................................. 8, 15

*In re Packaged Ice Antitrust Litig.*,
No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011) .................................. passim

*In re Potash Antitrust Litig.*,
159 F.R.D. 682 (D. Minn. 1995)................................................................... 25

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
584 F. Supp. 2d 697 (M.D. Pa. 2008) .......................................................... 12

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
164 F.R.D. 362 (S.D.N.Y. 1996) .................................................................. 18

*In re Residential Doors Antitrust Litig.*,
No. 94–3744, Civ.A. 96–2125, MDL 1039, 1998 WL 151804 (E.D. Pa. April 2, 1998) ....... 16

*In re Scrap Metal Antitrust Litig.*,
527 F.3d 517 (6th Cir. 2008) .................................................... 24, 25, 26

*In re Southeastern Milk Antitrust Litig.*,
No. 2:08-md-1000, 2010 WL 3521747 (E.D. Tenn. Sept. 7, 2010) ....................................... 25

*In Re Telectronics Pacing Sys. Inc.*,
137 F. Supp. 2d 985 (S.D. Ohio 2001) ........................................................ 8, 9, 11

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
722 F.3d 838 (6th Cir. 2013) ......................................................... 19, 24, 26

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006) ....................................... passim

*IUE–CWA v. Gen. Motors Corp.*,
238 F.R.D. 583 (E.D. Mich. 2006) ..................................................... 8, 9, 11, 12

*Lessard v. City of Allen Park*,
372 F. Supp. 2d 1007 (E.D. Mich. 2005)......................................................... 8

*Levya v. Medline Indus, Inc.*,
716 F.3d 510 (9th Cir. 2013) ......................................................................... 25

*Marcus v. Dep't of Revenue*,
206 F.R.D. 509 (D. Kan. 2002) ...................................................................... 23

*Miller v. Univ. of Cincinnati*,
241 F.R.D. 285 (S.D. Ohio 2006) ................................................................. 19

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ................................................................................. 17, 18

*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*,
234 F.R.D. 627 (W.D. Ky. 2006) ..................................................................... 9

*Paper Systems Inc. v. Mitsubishi Corp.*,
193 F.R.D. 601 (ED. Wis. 2000) ................................................................... 27

*Peters v. Nat'l R.R. Passenger Corp.*,
966 F.2d 1483 (D.C. Cir. 1992) ..................................................................... 17

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ....................................................................................... 17

*Powers v. Hamilton Cnty. Public Defender Comm.*,
501 F.3d 595 (6th Cir. 2007) ......................................................................... 25

*Senter v. Gen. Motors Corp.*,
532 F.2d 511 (6th Cir. 1976) ......................................................................... 22

*Sheick v. Auto. Component Carrier LLC*,
No. 09-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) ...................... passim

*Sprague v. General Motors Corp.*,
133 F.3d 388 (6th Cir. 1998) ......................................................................... 19

*Stoetzner v. U.S. Steel Corp.*,
897 F.2d 115 (3d Cir. 1990) ........................................................................... 15

*Stout v. J.D. Byrider*,
228 F.3d 709 (6th Cir. 2000) ......................................................................... 22

*Sullivan v. DB Investments, Inc.*,
667 F.3d 273 (3d Cir. 2011) ........................................................................... 10

*TBK Partners, Ltd. v. Western Union Corp.*,
675 F.2d 456 (2d Cir. 1982) ........................................................................... 15

*Thacker v. Chesapeake Appalachia, LLC*,
    259 F.R.D. 262 (E.D. Ky. 2009) ........................................................... 19

*UAW v. General Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ........................................................ passim

*Van Horn v. Trickey*,
    840 F.2d 604 (8th Cir. 1988) ............................................................... 9

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ...................................................... 8, 13, 14

## <u>Rules</u>

Fed. R. Civ. P. 23 ...................................................................... 10, 18

Fed. R. Civ. P. 23(a)(3) ................................................................. 21, 22

Fed. R. Civ. P. 23(a)(4) ..................................................................... 22

Fed. R. Civ. P. 23(b)(2) ..................................................................... 19

Fed. R. Civ. P. 23(c)(2)(B) .................................................................. 17

Fed. R. Civ. P. 23(e)(1) ..................................................................... 17

Fed. R. Civ. P. 23(a) ............................................................... 19, 22, 24

Fed. R. Civ. P. 23(a)(1) ..................................................................... 19

Fed. R. Civ. P. 23(a)(2) ..................................................................... 20

Fed. R. Civ. P. 23(b) ........................................................................ 19

Fed. R. Civ. P. 23(b)(3) ................................................................ passim

Fed. R. Civ. P. 23(c)(3) ..................................................................... 17

Fed. R. Civ. P. 23(e) ........................................................................ 17

Fed. R. Civ. P. 23(g) ........................................................................ 23

## <u>Other Authorities</u>

4 NEWBERG ON CLASS ACTIONS § 18.05 ........................................................ 20

MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.311, at 288 (2004) ........................ 18

NEWBERG § 3:10 at 278 ........................................................................ 20

**Introduction**

The End-Payor Plaintiffs ("EPPs") respectfully seek final approval of the settlements reached with the settling defendants described below.

These settlements collectively make available nearly $225 million in cash for the benefit of the settlement classes and also require the settling defendants to provide significant cooperation to the EPPs in the continued prosecution of EPPs' claims against the non-settling defendants. The settlements also provide that certain of the settling defendants will not engage in certain specified conduct for a period of two years that would violate the antitrust laws involving the automotive parts that are at issue in these lawsuits.

As explained below, the settlements provide for an excellent result for the classes in light of the substantial risks of litigation. In negotiating the settlements, Settlement Class Counsel for the EPPs generally took into account the evidence supporting EPPs' claims, the dollar volume of commerce affected by the particular settling defendant's conduct, the defenses that the settling defendants had and were expected to raise, and the substantial value provided by the settling defendants' agreements to cooperate with the EPPs' in the continued prosecution of their claims against the non-settling defendants. EPPs therefore respectfully submit that the proposed settlements are fair, reasonable, and adequate, and should be granted final approval.

Notice of these settlements, as required by Rule 23 and in compliance with this Court's orders, was provided through the notice plan approved by the Court. *See, e.g.*, Case No. 12-cv-00103, ECF No. 421. The response from the members of the settlement classes has been positive to date. There have been no objections to the settlements thus far, nor have there been any requests for exclusion by any class members.

1

To effectuate the settlements, it is also respectfully submitted that the Court should certify the settlement classes it provisionally certified in its preliminary approval orders. The classes meet all of the requirements for certification as settlement classes and should be granted final certification. The Court should also confirm the appointment of Settlement Class Counsel.

## Background

**I.    The Settlements Provide Substantial Benefits to EPPs.**

  **A.    Cash Components of the Settlements.**

The Court previously preliminarily approved each of the settlements (the "Settlements") between EPPs and a number of the settling defendants (collectively, the "Settling Defendants"). Those Settlements are now before the Court for final approval. The Settling Defendants are: Nippon Seiki Company Ltd., N.S. International, Ltd., and New Sabina Industries, Inc. (collectively, "Nippon Seiki"); Lear Corporation ("Lear"); Kyungshin-Lear Sales and Engineering, LLC ("KL Sales"); Autoliv, Inc., Autoliv ASP, Inc., Autoliv B.V. & Co. KG, Autoliv Safety Technology, Inc., and Autoliv Japan Ltd (collectively, "Autoliv"); TRW Deutschland Holding GmbH and ZF TRW Automotive Holdings Corp. (f/k/a TRW Automotive Holdings Corp.) (collectively, "TRW"); Yazaki Corporation and Yazaki North America, Inc. (collectively, "Yazaki"); Panasonic Corporation and Panasonic Corporation of North America (collectively, "Panasonic"); Hitachi Automotive Systems, Ltd. ("HIAMS"); T. RAD Co., Ltd. and T.RAD North America, Inc. (collectively, "T.RAD"); Fujikura Ltd. and Fujikura Automotive America LLC (collectively, "Fujikura"), and Sumitomo Electric Industries, Ltd., Sumitomo Wiring Systems, Ltd.; Sumitomo Electric Wiring Systems, Inc. (incorporating K&S Wiring Systems, Inc.); Sumitomo Wiring Systems (U.S.A.) Inc. (collectively, "Sumitomo").

The Settlements involve nine defendants and their affiliates and nineteen automotive parts (the "Settled Parts") that EPPs contend were the subject of illegal bid rigging and price-

2

fixing. For the Settlements currently before the Court, the Settling Defendants, Settled Parts, and

settlement amounts are as follow:

| Settling Defendant | Automotive Parts Case | Settlement Fund |
|---|---|---|
| Autoliv | Occupant Safety Systems | $19,000,000 |
| Fujikura | Automotive Wire Harness Systems | $7,144,000 |
| HIAMS | Air Flow Meters | $5,047,920 |
| | Alternators | $6,216,420 |
| | Electronic Throttle Bodies | $6,870,780 |
| | Fuel Injection Systems | $8,693,640 |
| | Ignition Coils | $7,431,660 |
| | Inverters | $2,337,000 |
| | Motor Generators | $2,337,000 |
| | Starters | $3,832,680 |
| | Valve Timing Control Devices | $3,972,900 |
| KL Sales | Automotive Wire Harness Systems | $228,000 |
| Lear | Automotive Wire Harness Systems | $3,040,000 |
| Nippon Seiki | Instrument Panel Clusters | $4,560,000 |
| Panasonic | HID Ballasts | $5,510,596 |
| | Steering Angle Sensors | $6,293,229 |
| | Switches | $5,296,175 |
| Sumitomo | Automotive Wire Harness Systems | $35,817,220 |
| | Heater Control Panels | $2,182,780 |
| T.RAD | ATF Warmers | $741,000 |
| | Radiators | $6,669,000 |
| TRW | Occupant Safety Systems | $5,446,350 |
| Yazaki | Automotive Wire Harness Systems | $73,267,000 |
| | Fuel Senders | $58,000 |
| | Instrument Panel Clusters | $2,675,000 |
| | **TOTAL** | **$224,668,350** |

Because of the different parts involved, there are twenty-five settlement classes (the

"Settlement Classes"). As part of the settlement negotiations, EPPs generally considered the

evidence regarding the defendants' conduct, the estimated dollar amount of commerce affected

by that conduct, and the value of the other settlement terms, including, most particularly, the

value of discovery cooperation offered by the Settling Defendants. *See* Joint Declaration of

3

Steven N. Williams, Hollis Salzman, and Marc M. Seltzer in Support of End-Payor Plaintiffs'
Motion for Final Approval of Settlement with Certain Defendants and for Certification of
Settlement Classes ("Joint Decl."), filed concurrently herewith as Exhibit 1. In the opinion of
Settlement Class Counsel, the Settlements are an excellent result for the Settlement Classes and
are fair, reasonable, and adequate. *Id.*

  **B.**  **Cooperation and Other Terms.**

  As noted above, in addition to very substantial cash payments, the Settling Defendants
are required to provide EPPs with various forms of cooperation, including (1) producing
documents and data relevant to the ongoing claims of the EPPs against the non-settling
defendants; (2) making witnesses available for interviews with EPP representatives; (3)
providing assistance in understanding certain data and other information produced to EPPs; and
(4) facilitating the use of such data and information at trial. Those terms were described in the
preliminary approval motions and are set forth at length in the settlement agreements between
the parties (the "Settlement Agreements"). Certain of the Settling Defendants have also agreed
not to engage in certain specified conduct for a period of two years that would violate the
antitrust laws involving the Settled Parts.

  In exchange for the settlement payments, and cooperation, the Settlements provide for the
release of "Released Claims" against Settling Defendants and other "Releasees" (as defined in
the Settlement Agreements). The Settlement Agreements will not affect other current or future
defendants' joint and several liability for the Settling Defendants' alleged wrongdoing. Each of
the Settling Defendants' sales remain in their respective cases, and the non-settling defendants—
other than those who are ultimately entitled to the reduced liability provisions of the Antitrust
Criminal Penalty Enhancement and Reform Act—remain jointly and severally liable for
damages applicable to those sales, less only the amounts paid in settlement. Thus, the Settlement

Agreements will not limit the Settlement Classes' right to recover the full amount of the damages available under the law from the non-settling defendants, against whom EPPs continue to prosecute their claims.

The Settlement Agreements are the product of lengthy negotiations between counsel very experienced in prosecuting and defending complex antitrust class action cases. The Settlement Agreements were all negotiated over an extended period of time by Settlement Class Counsel and Settling Defendants' counsel, through in-person and telephonic meetings and correspondence, assisted in several instances, by experienced mediators. In preparation for such negotiations, Settlement Class Counsel undertook a diligent and thorough investigation of the legal and factual issues presented by this litigation. Thus, Settlement Class Counsel were well informed as to the facts of the case and the strength and weaknesses of the claims asserted by the EPPs when the Settlement Agreements were negotiated.

## II.     The Notice Plan was Carried Out and Provided Adequate Notice of the Settlements.

The Settlements provide substantial cash benefits to consumers and other class members who purchased or leased new motor vehicles not for resale containing the automotive parts subject to the settlements, or indirectly purchased one or more of those automotive parts as a replacement part, in jurisdictions that allow EPPs to seek money damages or restitution: Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin (the "IPP States").

Through a preeminent class action notice consultant, Kinsella Media, LLC ("Kinsella"), EPPs implemented a class-notice program utilizing paid and earned media. Kinsella used syndicated data available from the GfK MediaMark Research, Inc.'s ("GfK MRI") *2015*

*Doublebase Study*[1] to select a target audience with demographics that encompass the characteristics of members of the Settlement Classes. *See* Case No. 12-cv-00103, ECF No. 414. The multi-faceted class notice program included published notice in publications like *Sports Illustrated*, *Time*, *The Wall Street Journal* and *Automotive News,* and online media efforts through banner advertisements on outlets like Facebook and Yahoo!. *See* Interim Declaration of Katherine Kinsella ("Kinsella Decl."), filed concurrently herewith as Exhibit 2. To date,[2] these banner advertisements have delivered a total estimated 304,136,564 gross impressions.[3] *Id.* The banner advertisements will run until March 20, 2016 across the partner websites. *Id.* At a minimum, the total number of planned gross impressions, which is 337,849,000, will be reached. The earned media component of this notice program included multimedia news release ("MNR") distributed on PR Newswire's US1 National Circuit on February 16, 2016. *Id.* As of March 8, 2016, the release was republished across 252 news websites and received over 14,487 views. *Id.* A total of 421 journalists engaged with the MNR. *Id.* This engagement contributed to coverage of the Settlements in major national outlets including: Reuters, *USA Today*, *NBC Money*,

---

[1] GfK MRI is a nationally accredited media and marketing research firm that provides syndicated data on audience size, composition, and other relevant factors pertaining to major media, including broadcast, magazines, newspapers, and outdoor advertising.  It provides a single-source measurement of major media, products, services, and in-depth consumer demographic and lifestyle/psychographic characteristics.  GfK MRI produces the annual Doublebase Survey, a study of over 50,000 adults consisting of two full years of data. The sample consists of over 26,000 respondents. Fieldwork is done in two waves per year, each lasting six months and consisting of 13,000 interviews. At the end of the interview, the fieldworker presents a self-administered questionnaire that measures approximately 500 product/service categories, 6,000 brands, and various lifestyle activities.

[2] Kinsella has submitted an interim declaration at the request of Settlement Class Counsel for the purposes of this motion. Kinsella will submit a final declaration once the notice program has completed.

[3] Gross impressions are the total number of times a media vehicle containing the Notice is seen. This figure does not represent the total number of unique viewers of the Notice, as some viewers/ readers will see the Notice in more than one media vehicle.

*Consumer Reports,* and *Automotive Weekly*. *Id.* Other earned media efforts included statewide press releases in the IPP States as well as outreach to 411 national and local reporters for print and television that generated two national news stories and 19 local outlet reprints. *Id.* Media outreach will continue through May 11, 2016. *Id.* Also, beginning on February 8, 2016, Kinsella registered sponsored keywords and phrases (*e.g.*, "Auto Parts Settlement") with all major search engines, including Google AdWords, Bing Microsoft Advertising, and their search partners. *Id.*

Members of the Settlement Classes also can contact a toll-free helpline or register online at the settlement website, www.AutoPartsClass.com, both of which are maintained by Garden City Group, LLC ("GCG"). *See* Interim Declaration of Lori Castaneda ("GCG Decl."), filed concurrently herewith as Exhibit 3. The website provides answers to frequently asked questions, important deadlines, a list of the Settling Defendants, as well as provides access to documents relevant to the settlements, including the long form notice. *Id.* The website has been operational since October 12, 2015, and is accessible 24 hours a day, seven days a week. *Id.* As of March 8, 2016, the website has received visits from 503,380 unique visitors. *Id.*

## III.    The Reaction of Settlement Class Members was Positive.

The reaction of EPP class members to these Settlements has been positive thus far. The deadline for submission of objections to the proposed settlements or requests for exclusion from the Settlement Classes is April 11, 2016. To date, there are no objections to any of the Settlements, no class members have requested to be excluded from the Settlement Classes, and no class members have requested an opportunity to be heard at the final fairness hearing. *Id.*[4]

---

[4] GCG will provide a final declaration that includes the total number of objections and requests for exclusion received as of the conclusion of the notice program.

**Legal Standard**

The Sixth Circuit and courts in the Eastern District of Michigan "have recognized that the law favors the settlement of class action lawsuits." *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013); *see also In re Packaged Ice Antitrust Litig.*, No. 08- MD-01952, 2011 WL 717519, at *7 (E.D. Mich. Feb. 22, 2011); *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (federal policy favors settlement of class actions). "Given that class settlements are favored, the role of the district court is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement taken as a whole, is fair, reasonable and adequate to all concerned." *IUE–CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006) (internal quotation marks and citations omitted).

To be given final approval, a class action settlement must be "fair, reasonable, and adequate." *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *14 (E.D. Mich. Oct. 18, 2010); *see also Packaged Ice*, 2011 WL 717519, at *8. "There are three steps which must be taken by the court in order to approve a settlement: (1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement." *In Re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)); *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010).

The court considers whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen Park*, 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Vukovich*, 720 F.2d at 921-23). This determination requires consideration of "whether the interests of the class as a whole are better

8

served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citation omitted); *Sheick,* 2010 WL 4136958, at *14-15.

The court has broad discretion when approving a class action settlement. *UAW*, 497 F.3d at 636; *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). In exercising this discretion, courts give considerable weight and deference to the view of experienced counsel as to the merits of an arm's-length settlement. *Dick v. Spring Commc'ns*, 297 F.R.D. 283, 297 (W.D. Ky. 2014) ("The Court defers to the judgment of the experienced counsel associated with the case, who have assessed the relative risks and benefits of litigation."). Indeed, a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 632 (W.D. Ky. 2006) (citations omitted); *see also In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2003 WL 23316645, at *6 (E.D. Pa. Sept. 5, 2003).

Because a settlement represents an exercise of judgment by the negotiating parties, a judge reviewing a settlement will not "substitute his or her judgment for that of the litigants and their counsel," *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006), or "decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981). There are two reasons for this. First, the object of settlement is to avoid the determination of contested issues, so the approval process should not be converted into an abbreviated trial on the merits. *Van Horn v. Trickey,* 840 F.2d 604, 607 (8th Cir. 1988). Second, "[b]eing a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement." *Telectronics,* 137 F. Supp. 2d at 1008-09 (citing *Manual (Third)* §30.42

9

(1995)). This is particularly true in the case of class actions. *Berry v. Sch. Dist. of City of Benton Harbor,* 184 F.R.D. 93, 97 (W.D. Mich. 1998).

Because of the uncertainties and risks inherent in any litigation, courts take a common sense approach and approve class action settlements if they fall within a "range of reasonableness." *Sheick*, 2010 WL 4136958, at *15 (citation omitted). The court should guard against demanding too large a settlement, because a settlement "represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *23 (E.D. Mich. July 13, 2006) (citation omitted); *accord Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 324 (3d Cir. 2011).

Finally, this Court has preliminarily approved the Settlement Agreements and "preliminary approval gives rise to a presumption that the settlement is fair, reasonable and adequate," particularly in the absence of objections by class members. *See Fussell v. Wilkinson*, No. 1:03-cv-704, 2005 WL 3132321 at *3 (S.D. Ohio Nov. 22, 2005).

## <u>Argument</u>

## IV.    The Settlements are Fair, Reasonable, and Adequate and Should be Given Final Approval.

The EPP settlements before the Court meet the criteria required for final approval under Rule 23 of the Federal Rules of Civil Procedure. They provide meaningful benefits and were reached after negotiations between experienced counsel who had sufficient background about the merits and defenses to the claims asserted. The settlements reflect a reasonable compromise in light of the liability, damages, and procedural uncertainties facing both the EPPs and the Settling Defendants.

Courts in the Sixth Circuit consider a number of factors when determining whether a settlement should be granted final approval: (1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (2) the complexity, expense, and likely duration of further litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest. *Packaged Ice*, 2011 WL 717519, at *8; *see also UAW*, 497 F.3d at 631; *Griffin*, 2013 WL 6511860, at *3; *Cardizem*, 218 F.R.D. at 522. No single factor is determinative and the court may weigh each factor based on the circumstances of the case. *Int'l Union,* 2006 WL 1984363, at *21. The court may "choose to consider only those factors that are relevant to the settlement at hand." *Id*. at *22; s*ee also Grenada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992) (holding that a district court enjoys wide discretion in assessing the weight and applicability of factors).

### A.  The Likelihood of the EPPs' Success on the Merits Weighed Against the Relief Offered in the Settlements Supports Approval.

The court assesses class action settlements "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick*, 2010 WL 4136958, at *15 (quoting *IUE-CWA*, 238 F.R.D. at 594); *Int'l Union,* 2006 WL 1984363, at *21. This is especially true for class actions, since they are "inherently complex." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). "[S]ettlement avoids the costs, delays, and multitude of other problems associated with them." *Id.* The fairness of such a settlement "turns in large part on the bona fides of the parties' legal dispute." *UAW*, 497 F.3d at 631. When considering the likelihood of plaintiffs' success on the merits of the litigation, the ultimate question is whether the interests of the class as a whole are better served if the litigation

11

is resolved by settlement rather than pursued. *Sheick*, 2010 WL 4136958, at *16 (citing *IUE-CWA*, 238 F.R.D. at 595).

EPPs believe they will prevail in these cases. Many of the Settling Defendants pleaded guilty to the very conduct alleged by EPPs in their complaints. But EPPs also recognize that success at trial is not guaranteed. Although illegal conspiracies existed to coordinate bidding and other activities concerning the Settled Parts, the settling and non-settling Defendants have vigorously defended these cases. Absent the Settlements, the Settling Defendants would have opposed EPP's motions for class certification; if that challenge failed, they would have moved for summary judgment of numerous issues; if that challenge failed, they would have offered numerous defenses to the EPPs' claims at trial. Even if EPPs successfully established that the Settling Defendants conspired to fix prices and rig bids, the Settling Defendants would offer expert testimony suggesting that damages were far less than sought by EPPs. EPPs dispute these arguments and believe they would prevail if the case proceeded to trial. But the Settlements avoid the risks of further litigation and ensure recovery for members of the Settlement Classes.

Moreover, the discovery cooperation that the Settling Defendants have agreed to provide is a substantial benefit to the classes and "strongly militates toward approval" of the settlements. *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003). This cooperation will enhance and strengthen EPPs' prosecution of claims against the Defendants who continue to litigate these cases. *Linerboard*, 292 F. Supp. 2d at 643; *Packaged Ice*, 2011 WL 717519, at *10 (noting that cooperation by the settlement defendant "has already been beneficial to the Plaintiffs in their continued prosecution of their claims against the non-settling Defendants"); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("[T]he benefit of obtaining the cooperation of the Settling Defendants tend to offset the fact that they

12

would be able to withstand a larger judgment."). And certain of the Settling Defendants' agreement not to engage in certain specified conduct for a period of two years that would violate the antitrust laws involving the automotive parts at issue also provides value to the Settlement Classes.

Settlement Class Counsel believe that the Settlements represent an excellent recovery for EPPs. Weighing the benefits of the Settlements against the risks of continued litigation tilts the scale heavily toward final approval. *See Griffin*, 2013 WL 6511860, at *4; *Packaged Ice*, 2011 WL 717519, at *9.

### B.     The Complexity, Expense, and Likely Duration of Continued Litigation Favor Final Approval.

"Settlement should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *Cardizem*, 218 F.R.D. at 523 (quoting *Vukovich*,  720 F.2d at 922). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain  little or no recovery." *Id*. at 523.

Antitrust cases are notoriously difficult and protracted, and any final adjudicated recovery for the classes would almost certainly be years away, given the complexity of these cases and the potential for appeals. Should EPPs' claims proceed to a trial, the trial would be expensive, time-consuming and complex, and likely involve testimony from multiple expert witnesses. Even a favorable trial outcome would likely be contested on appeal. Indeed, each subsequent step in the litigation process would require the classes to incur additional expenses without any assurances of a more favorable outcome than that provided by the Settlements.

The Court itself has had substantial opportunity to consider the claims and defenses in this litigation and knows that complex antitrust litigation of this scope and magnitude has many inherent risks that settlements extinguish. The fact that EPPs achieved very substantial

13

recoveries, which eliminate all risks of continued litigation while ensuring substantial payments for the benefit of the classes, supports final approval of the Settlements.

### C.    The Judgment of Experienced Counsel Who Have Evaluated the Strength of the Claims, Defenses, and Risks Supports Approval.

The Settlements were reached by experienced counsel after arm's-length negotiations and their judgment and recommendation to approve the Settlements should be provided some degree of deference. *Dick*, 297 F.R.D. at 296 ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate.") (quoting *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010)); *see also In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d. 336, 341 (E.D. Pa. 2007).

In deciding whether a proposed settlement warrants approval, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008). Counsel's judgment "that settlement is in the best interest of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18). "In the absence of evidence of collusion (there is none here) this Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981, at *9 (E.D. Mich. Jul. 31, 2013) (quoting *Vukovich*, 720 F.2d at 922-23).

Settlement Class Counsel collectively have decades of experience in litigating antitrust class actions and other complex litigation. Similarly, counsel for the Settling Defendants are well-respected and experienced antitrust lawyers. Settlement Class Counsel believe that the

14

Settlements each provide an excellent result for the classes in light of the circumstances of each Settling Defendant's conduct and potential liability. *See* Joint Decl.

Moreover, the discovery and available information allowed Settlement Class Counsel to evaluate the strengths and weaknesses of the claims and defenses and to evaluate the benefits of the Settlements, which favor approval of the Settlement Agreements. *See Sheick*, 2010 WL 4136958 at *19. Discovery in the above-captioned cases varied, but in each settlement negotiation, Settlement Class Counsel learned important information about the conspiracies through review of documents produced to the United States Department of Justice, proffers of information by cooperating Defendants, and/or discovery from this litigation. The amount of discovery completed is a factor to be considered in the settlement approval process, but there is no baseline required to satisfy this factor. *Packaged Ice*, 2010 WL 3070161, at *5-6. The "question is whether the parties had adequate information about their claims." *Griffin*, 2013 WL 6511860, at *4 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004)). The judgment of experienced counsel supports final approval of the Settlements.

### D.     The Reaction of Class Members Weighs in Favor of Final Approval.

The deadline for class members to exclude themselves from the proposed Settlement Classes is April 11, 2016. At this point, Settlement Class Counsel have received no objections to any of the Settlements. The reaction to date from the members of the Settlement Classes supports the adequacy of the settlements. *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (holding that objections by about 10% of class "strongly favors settlement"); *see also TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 458, 462 (2d Cir. 1982) (approving settlement despite objections of large number of class); *Taifa v. Bayh*, 846 Supp. 723, 728 (N.D. Ind. 1994) (approving class settlement despite objections from more than 10% of

15

class); *Automotive Refinishing Paint,* 617 F.Supp.2d at 342 ("The fact that an overwhelming majority of the Class did not file objections is a significant element to consider in determining the overall fairness of the settlements."); *In re Residential Doors Antitrust Litig.*, No. 94–3744, Civ.A. 96–2125, MDL 1039, 1998 WL 151804, at *7 (E.D. Pa. April 2, 1998) (small number of exclusions and absence of objections "militates strongly in favor of approval" of proposed settlement). The lack of a single opt-out to date speaks volumes about the adequacy of the Settlements.

**E.    The Settlements are Consistent with the Public Interest.**

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (quoting *Granada*, 962 F.2d at 1205); *see also Griffin*, 2013 WL 6511860, at *5; *Packaged Ice*, 2011 WL 717519, at *12. In light of the conduct at issue and guilty pleas related to the claims here, there is no countervailing public interest that provides a reason to disapprove the Settlements. *Griffin*, 2013 WL 6511860, at *5. This factor also supports final approval.

**F.    The Settlement Agreements are the Result of Thorough Arm's Length Negotiations Conducted by Highly Experienced Counsel.**

There is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion unless there is contrary evidence. *Griffin*, 2013 WL 6511860, at *3; *Packaged Ice*, 2011 WL 717519, at *12; *Int'l Union,*, 2006 WL 1984363, at *26; *Sheick*, 2010 WL 4136958, at *19-20. The Settlements here were reached after adversarial litigation and often contentious discovery. The negotiations leading to the Settlements were conducted entirely at arm's length and often took many months of hard bargaining to arrive at agreements. The Settlements were negotiated in

16

good faith with counsel on each side zealously representing the interests of their clients. (*See* Joint Decl.).

## V.  Notice of the Settlements was Proper Under Rule 23(e) and Satisfied All Due Process Requirements.

Federal Rule of Civil Procedure 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]." Rule 23(e) notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *UAW*, 497 F.3d at 629 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). For Rule 23(b)(3) actions, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition, the notice must clearly and concisely state: (1) the nature of the action; (2) the class definition; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The purpose of notice in a class action is to "afford members of the class due-process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974)). Due process requires that absent class members be provided the best notice practicable, reasonably calculated to apprise them of the pendency of the action, and affording them the opportunity to opt out or object. *Phillips Petroleum Co. v.*

17

*Shutts*, 472 U.S. 797, 812 (1985); *see also UAW*, 497 F.3d at 629 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The "best notice practicable" does not mean actual notice, nor does it require individual mailed notice where there are no readily available records of class members' individual addresses or where it is otherwise impracticable. *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 548-53 (N.D. Ga. 1992); MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.311, at 288 (2004) ("MANUAL"). The mechanics of the notice process "are left to the discretion of the court subject only to the broad 'reasonableness' standard imposed by due-process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975). Each class member need not receive actual notice for the due-process standard to be met, "so long as class counsel acted reasonably in selecting means likely to inform persons affected." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996).

The class notice program here was multi-faceted rather than relying on simply one medium of communication. The notice program used both paid and earned media. It included published notice in several national publications; online media efforts through social media sites and search engines; and earned media efforts through press releases, television news coverage, and a website. *See* Kinsella Decl. The notice program easily satisfied the requirements of Rule 23 and due process. *Packaged Ice*, 2011 WL 717519, at *5; *Sheick,* 2010 WL 4136958 at *15.

## VI.    Certification of Settlement Classes is Appropriate.

In its preliminary approval orders, the Court found that Rule 23's requirements were met and provisionally certified, for purposes of settlement only, Settlement Classes relating to the parties and parts covered by the Settlements. It is well established that a class may be certified for purposes of settlement. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S.

18

591 (1997); *Int'l Union,*, 2006 WL 1984363, at *3, *18; *Cardizem*, 218 F.R.D. at 516-19; *Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 266-70 (E.D. Ky. 2009). The Settlements meet the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(2) and 23(b)(3) for settlement purposes.

      **A.**      **The Settlement Classes Satisfy Rule 23(a).**

Certification of a class requires meeting the requirements of Rule 23(a) and one subsection of Rule 23(b). *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013); *Griffin*, 2013 WL 6511860, at *5; *Int'l Union*, 2006 WL 1984363, at *19 (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class. *Griffin*, 2013 WL 6511860, at *5; *Date*, 2013 WL 3945981, at *3.

      **1.**      <u>**The Settlement Classes Are So Numerous That It Is Impracticable To Bring All Class Members Before The Court.**</u>

No magic number is required to satisfy the numerosity requirement of Rule 23(a)(1). *Miller v. Univ. of Cincinnati*, 241 F.R.D. 285, 288 (S.D. Ohio 2006). A class representative need only show that joining all members of the potential class is extremely difficult or inconvenient. *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005). The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 403 (S.D. Ohio 2007) (citing *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004)); *see also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

19

Here, the Settlement Classes consist of persons and entities who, for the last ten or more years depending on the Settlement Agreement, purchased or leased a new motor vehicle in the United States not for resale that included at least one of the Settled Parts, or indirectly purchased one or more of the Settled Parts as a replacement part, which were manufactured or sold by a Settling Defendant, any current or former parent, subsidiary, or affiliate of Defendant or any co-conspirator of the Defendants. It is beyond dispute that during the class periods, thousands of persons and entities throughout the United States have purchased or leased new motor vehicles, not for resale, containing Settled Parts. Because of the large number of class members and their geographical distribution throughout the United States, joinder is not just highly impractical, it would be impossible.

**2.    Common Questions of Law and Fact Exist.**

That common questions of law and fact exist is evident here. "[A]llegations concerning the existence, scope and efficacy of an alleged conspiracy present questions adequately common to class members to satisfy the commonality requirement." *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 478 (W.D. Pa. 1999) (citing 4 NEWBERG ON CLASS ACTIONS § 18.05-15 (3d ed. 1992)). Thus, in price fixing cases, courts "have consistently held that the very nature of a conspiracy in an antitrust action compels a finding that common questions of law and fact exist." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006); *see also* NEWBERG § 3:10 at 278 ("[In an] antitrust action on behalf of purchasers who have bought defendants' products at prices that have been maintained above competitive levels by unlawful conduct, the courts have held that the existence of an alleged conspiracy or monopoly is a common issue that will satisfy the Rule 23(a)(2) prerequisite").

20

Here, EPPs have identified the following issues common within each of the Settlement Classes:

- Whether Defendants engaged in combinations and conspiracies among themselves to fix, raise, maintain, or stabilize the prices of the Settled Parts sold in the United States;

- Whether Defendants engaged in combinations and conspiracies among themselves to rig bids quoted to customers of the Settled Parts sold in the United States;

- Whether Defendants engaged in combinations and conspiracies to allocate customers and the markets for the Settled Parts sold in the United States;

- The duration of the illegal contracts, combinations, and/or conspiracies;

- Whether Defendants' conduct resulted in unlawful overcharges on the prices of the Settled Parts; and

- Whether unlawful overcharges on the price of the Settled Parts were passed-through to the indirect purchasers of the Settled Parts, and if so, the appropriate measure of damages.

Any one of these substantive issues would, standing alone, establish the requisite commonality under Rule 23(a)(2). *See, e.g.*, *Packaged Ice*, 2011 WL 717519, at *6 (holding that the commonality was satisfied by questions concerning "whether Defendants conspired to allocate territories and customers and whether their unlawful conduct caused Packaged Ice prices to be higher than they would have been absent such illegal behavior and whether the conduct caused injury to the Class Members"). "Indeed, consideration of the conspiracy issue would, of necessity, focus on defendants' conduct, not the individual conduct of the putative class members." *Flat Glass*, 191 F.R.D. at 484.

### 3.     EPPs' Claims are Typical of Those of the Settlement Classes.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "In the antitrust context, typicality is established when the named plaintiffs and all class members allege[] the same antitrust violation by defendants." *Cason-Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528, 537 (E.D. Mich. 2013) (quoting *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 405); *see*

21

*also Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000); *In re Am. Med. Sys.*, 75 F.3d at 1082; *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255 at *40-41. "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin*, 2013 WL 6511860, at *6 (quoting *Int'l Union*, 2006 WL 1984363, at * 19); *Date*, 2013 WL 3945981, at *3.

Because the EPP class representatives and the members of the Settlement Classes were all alleged victims of the conspiracies to fix prices, rig bids, and allocate the market and customers for the automotive parts at issue in the Settlement Agreements, and seek the same relief, Rule 23(a)(3) is satisfied. *See Cason-Merenda*, 296 F.R.D. at 537 (finding typicality met where "the claims of the named Plaintiffs and those of the remaining members of the proposed class all arise from the same conspiracy and are based on the same theory of liability under the Sherman Act.") (internal quotation marks and citation omitted)); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255 at *40-41 ("Because all Class Members' claims arise from . . . a conspiracy to allocate markets in violation of the Sherman Act, their claims are based on the same legal theory and the typicality requirement . . . is met").

## 4.   EPP Class Representatives and Their Counsel Have Fairly and Adequately Represented the Interests of the Class Members.

The final requirement of Rule 23(a) is that the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has articulated two criteria for determining adequacy of representation: "'1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 407 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)).

There are no conflicts between EPPs and the Settlement Classes because EPPs and members of the Settlement Classes: purchased or leased in the United States new motor vehicles, not for resale, containing the Settled Parts and/or purchased Settled Parts as a stand-alone replacement product have the same interest in establishing liability. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes" (internal quotation marks and citation omitted)). EPPs and the members of the Settlement Classes also share a common interest in obtaining Settling Defendants' early and substantial cooperation in prosecuting the claims against the non-Settling Defendants as well as the equitable relief obtained against certain of the Settling Defendants.

Rule 23(g) requires the court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. The Settlement Classes are represented by counsel with extensive experience in antitrust and class action litigation. They have vigorously prosecuted the classes' claims, and they will continue to do so through all phases of the litigation, including trial. *See Marcus v. Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002) ("In absence of evidence to the contrary, courts will presume the proposed class counsel is adequately competent to conduct the proposed litigation"). The Court appointed Cotchett, Pitre & McCarthy, LLP, Robins Kaplan LLP, and Susman Godfrey L.L.P. as Interim Co-Lead Class Counsel on behalf of EPPs in these actions and the other automotive parts antitrust cases within Master File No. 2:12-md-2311. *See* Case Management Order No. 3 filed as ECF No. 271. The Court also appointed these same firms as Settlement Class Counsel in each of the orders preliminarily approving the Settlement Agreements. *See supra* note 1. For

23

the same reasons that the Court appointed them to these positions, it should appoint them Settlement Class Counsel here.

**B.     EPPs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes.**

To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: common questions must predominate over any questions affecting only individual members and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem*, 521 U.S. at 615; *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008). With respect to both requirements, the Court need not inquire whether the "case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620 (internal citations omitted).

### 1.     Common Legal and Factual Questions Predominate.

The Rule 23(b)(3) requirement that common issues predominate ensures that a proposed class is "sufficiently cohesive to warrant certification." *Amchem*, 521 U.S. at 623. The predominance requirement is met where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Beanie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (citation omitted). "Rule 23(b)(3) does not mandate that a plaintiff seeking class certification prove that each element of the claim is susceptible to classwide proof." *In re Whirlpool Corp.*, 722 F.3d at 859. Instead, "'[a] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's

individualized position.'" *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 408 (quoting *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001)).

Common questions need only predominate; they need not be dispositive of the litigation. *Id.* (citing *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)); *cf. In re Scrap Metal Antitrust Litig.*, 527 F.3d at 535-36 (holding issues regarding the amount of damages do not destroy predominance). "[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Cason-Merenda*, 296 F.R.D. at 535 (quoting *Powers v. Hamilton Cnty. Public Defender Comm.*, 501 F.3d 595, 619 (6th Cir. 2007)). The Supreme Court very recently instructed that "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 133 S.Ct. 1184, 1191 (2013).[5]

Horizontal price-fixing cases are particularly well-suited for class certification because proof  of the conspiracy presents a common, predominating question. *Scrap Metal*, 527 F.3d at 535; *Packaged  Ice*, 2011 WL 717519, at *6; *In re Southeastern Milk Antitrust Litig.*, No. 2:08-

---

[5] The Supreme Court's decision in *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013), supports the appropriateness of class certification under Rule 23(b)(3) here. In *Comcast*, the Supreme Court found that the plaintiffs failed to establish that damages could be measured on a class-wide basis because only one of the plaintiffs' four theories of antitrust impact could be proved in a manner common to the class. 133 S.Ct. at 1429-31. Under *Comcast*, plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability. *See Levya v. Medline Indus, Inc.*, 716 F.3d 510 (9th Cir. 2013). Here, all of the Settlement Classes' claimed damages—the overcharge suffered as a result of inflated prices for the settled parts—stem from the Defendants' alleged price-fixing conspiracies.

md-1000, 2010 WL 3521747, at *5, 9-11 (E.D. Tenn. Sept. 7, 2010).[6] Affirming class
certification in *Scrap Metal*, the Sixth Circuit observed that the "district court found that the
'allegations of price-fixing and market allocation . . . will not vary among class members'
. . . Accordingly, the court found that the 'fact of damages' was a question common to the
class even if the amount of damages sustained by each individual class member varied."
527 F.3d at 535 (emphasis in original).

Here, the same set of core operative facts and theory of liability apply to claims against
each of the Settling Defendants. Whether the Settling Defendants entered into illegal
agreements to artificially fix prices of the automotive parts at issue in the Settlement
Agreements is a question common to all members of the Settlement Classes because it is an
essential element of proving an antitrust violation. Common questions also include whether, if
such an agreement was reached, Settling Defendants violated the antitrust laws, and whether
Settling Defendants' acts caused anticompetitive effects. *See, e.g.*, *Packaged Ice*, 2011 WL
717519, at *6. If EPPs and the other Settlement Class members brought individual actions, they
would each be required to prove the same claims in order to establish liability. For settlement
purposes, common issues predominate.

2. **Class Action Settlements Are Superior to Other Methods of Adjudication.**

Rule 23(b)(3) lists factors to be considered in determining the superiority of proceeding
as a class action compared to individual methods of adjudication: (1) the interests of the

---

[6] This is true even if there are individual state law issues, as long as the common issues still
outweigh the individual ones, *e.g.*, as long as a common theory can be alleged as to liability and
impact that can be pursued by the class. *See, e.g.*, *In re Whirlpool Corp.*, 722 F.3d at 861 ("[I]t
remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when
liability questions common to the class predominate over damages questions unique to class
members." (internal quotation marks and citation omitted)); *Scrap Metal*, 527 F.3d at 535 (where
common issues determine liability, fact that damages calculation may involve individualized
issues does not defeat predominance).

26

members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3).

The Auto Parts litigation has been centralized in this Court and to date no member of a Settlement Class has requested exclusion from the Settlements. Thus, consideration of factors (1) - (3) demonstrates the superiority of these Settlement Classes. The fourth factor is not relevant in a settlement-only class because the potential difficulties in managing a trial of the case is extinguished by the settlement. *Amchem*, 521 U.S. at 620; *Cardizem*, 218 F.R.D. at 517.

In addition, "[g]iven the complexities of antitrust litigation, it is not obvious that all members of the class could economically bring suits on their own." *In re Cardizem CD Antitrust Litig*, 200 F.R.D. at 325 (quoting *Paper Systems Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 605 (ED. Wis. 2000)). Proceeding as a class action will conserve judicial and private resources and will provide a single outcome that is binding on all Settlement Class members. *Cardizem*, 200 F.R.D. at 351. The alternatives to these Settlements are a multiplicity of separate lawsuits or no recourse for many class members for whom the cost of pursuing individual litigation would be prohibitive. *See In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 234 (E.D. Pa. 2012); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y 1996). The certification of Settlement Classes is superior to the alternatives in this litigation.

## Conclusion

For the foregoing reasons, EPPs respectfully request that the Court grant final approval of the Settlements and grant final certification of the Settlement Classes for purposes of settlement.

27

Date: March 10, 2016

Respectfully submitted,

By: **/s/  Devon P. Allard** _____
E. Powell Miller
Devon P. Allard
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Facsimile:  (248) 652-2852
epm@millerlawpc.com
dpa@@millerlawpc.com

*Interim Liaison Counsel for the Proposed End-Payor Plaintiff Classes*

Steven N. Williams
Demetrius X. Lambrinos
Elizabeth Tran
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
swilliams@cpmlegal.com
dlambrinos@cpmlegal.com
etran@cpmlegal.com

Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS KAPLAN LLP**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
hsalzman@robinskaplan.com
bpersky@robinskaplan.com
wreiss@robinskaplan.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford

Omar Ochoa
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, TX 75202
Telephone: (214) 754-1900
Facsimile: (214)754-1933
toxford@susmangodfrey.com
oochoa@susmangodfrey.com

Chanler A. Langham
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone:  (713) 651-9366
Facsimile:  (713) 651-6666
clangham@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Proposed End-Payor Plaintiff Classes*

29

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 10, 2016, I electronically filed the foregoing documents with the Clerk of the Court using the ECF system, which will send electronic notification of such filings upon all registered counsel of record.

THE MILLER LAW FIRM, P.C.

By: */s/ Devon P. Allard*
E. Powell Miller (P39487)
Devon P. Allard (P71712)
THE MILLER LAW FIRM, P.C.
950 W. University Drive
Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
dpa@millerlawpc.com

*Interim Liaison Counsel for End-Payor Plaintiffs*